# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DAVID WAYNE CHANDLER,  )
         )
   **Petitioner,**   )
         )
v.          )  **Case No. CIV-12-235-R**
         )
JIM FARRIS, Warden,   )
         )
   **Respondent.**[1]  )

## REPORT AND RECOMMENDATION

Petitioner David Wayne Chandler, a state prisoner appearing pro se, filed an Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus and Brief in Support, challenging the constitutionality of his criminal conviction by the State of Oklahoma. *See* Doc. Nos. 12, 13. Respondent Warden Jim Farris filed a Response to Amended Petition for Writ of Habeas Corpus (Doc. No. 17). United States District Judge David L. Russell has referred this action to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636. As outlined herein, the undersigned recommends that the Amended Petition be DENIED.

---

[1] In his Amended Petition, Petitioner named Eric Franklin, the previous Warden of Lexington Assessment and Reception Center ("LARC"), as Respondent. *See* Am. Pet. (Doc. No. 12). Jim Farris has since succeeded Eric Franklin as Warden at LARC, where Petitioner was incarcerated when the Amended Petition was filed and where Petitioner remains in custody. *See* Am. Pet. at 1; *Lexington Assessment & Reception Center*, Okla. Dep't of Corr., http://www.ok.gov/doc/Organization/Field_Operations/Division_III_-_Med_Max_Security_Institutions/Lexington_Assessment_&_Reception_Center.html (last visited Oct. 29, 2014). Accordingly, Warden Farris is hereby substituted as the sole Respondent in this proceeding. *See* 28 U.S.C. § 2243; R. 1(a)(1), 2(a), 12 of Rules Governing Section 2254 Cases in the United States District Courts; Fed. R. Civ. 25(d), 81(a)(4).

## I.  Relevant Case History and Issues Presented

On November 14, 2007, Petitioner was at his house in Oklahoma City together with his wife, four-year-old daughter, two of his three sons, and his father.  Vol. II Trial Tr. 23-24, 27, 29; Vol. III Trial Tr. 36 (*State v. Chandler*, No. CF-2007-6857 (Okla. Cnty., Okla. Dist. Ct. Feb. 22-24, 2010)) (Doc. No. 19).  Petitioner's wife, Christy Chandler, entered a bedroom that evening and found Petitioner and their four-year-old daughter "K.C."  Vol. II Trial Tr. 24, 31, 48-50; Vol. III Trial Tr. 36-38.  Christy Chandler suspected that K.C. had been abused, left the house with K.C. and the other children, and arranged contact with the police.  Vol. II Trial Tr. 31-36.

Petitioner ultimately was charged by information with the felony crime of sexual abuse of a child.  Vol. II Trial Tr. 7-8; Original Record ("OR") 1-3 (Doc. No. 19).  On February 24, 2010, after a jury trial in Oklahoma County District Court, Petitioner was convicted of one count of Sexual Abuse of a Child in violation of Title 10, Section 7115 of the Oklahoma Statutes.  Vol. III Trial Tr. 98; OR 196, 199.  In accordance with the jury's recommendation, Petitioner was sentenced to twenty-five years' imprisonment.[2]  Vol. III Trial Tr. 98; Sent'g Tr. 9 (Apr. 14, 2010) (Doc. No. 19); OR 183, 199.

---

[2] Effective November 1, 2007, Title 10, Section 7115 of the Oklahoma Statutes was amended to require a twenty-five-year minimum sentence for sexual abuse of a child under 12 years of age, and, thus, Petitioner received the minimum sentence that could be imposed.  *See* Act of June 4, 2007, ch. 325, § 1(F), 2007 Okla. Sess. Laws 1381, 1382. On May 21, 2009, Section 7115 was recodified as Title 21, Section 843.5.  *See* Act of May 21, 2009, ch. 233, § 207, 2009 Okla. Sess. Laws 1034, 1216; Okla. Stat. tit. 21, § 843.5(F).

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA"). OR 224; *see Chandler v. State*, No. F-2010-339 (Okla. Crim. App. filed Apr. 13, 2010).[3] While his appeal was pending, Petitioner also filed a Motion for New Trial with the OCCA. Pet'r's Mot. New Trial (Doc. No. 17-4). On June 7, 2011, the OCCA affirmed Petitioner's conviction and sentence and denied Petitioner's Motion for New Trial. OCCA Summ. Op., No. F-2010-339 (Doc. No. 17-3).

Petitioner then filed this federal habeas action and now raises three grounds for relief: (1) the evidence presented at trial was insufficient to support Petitioner's conviction; (2) several instances of "prosecutorial misconduct" deprived Petitioner of a fair trial; and (3) the OCCA's denial of Petitioner's Motion for New Trial deprived Petitioner of due process. *See* Am. Pet. (Doc. No. 12) at 3-5; Pet'r's Br. (Doc. No. 13) at 1-40.[4] Respondent concedes that Petitioner's claims are timely and that Petitioner exhausted his state-court remedies with respect to the grounds raised in the Amended Petition. *See* Resp. (Doc. No. 17) at 2.

---

[3] The docket sheets for *State v. Chandler*, No. CF-2007-6857, District Court of Oklahoma County (filed Dec. 3, 2007), and *Chandler v. State*, No. F-2010-339, Oklahoma Court of Criminal Appeals (filed Apr. 13, 2010), are publicly available through http://www.oscn.net.

[4] Citations to documents filed electronically use the page numbers assigned by the Court's electronic filing system.

## II.    The Standard of Review

The Tenth Circuit recently summarized the standard of review for evaluating state-court legal determinations that have been challenged in federal court through a 28 U.S.C. § 2254 habeas proceeding:

> Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we must apply a highly deferential standard in § 2254 proceedings, one that demands that state-court decisions be given the benefit of the doubt. If a claim has been "adjudicated on the merits in State court proceedings," we may not grant relief under § 2254 unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.
>
> Under the "contrary to" clause of § 2254(d)(1), we may grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, we may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal quotation marks omitted). Pursuant to AEDPA, factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. Analysis

#### A. Ground One: Sufficiency of the Evidence

Petitioner claims in Ground One that the evidence admitted at his trial was insufficient for a jury to have found, beyond a reasonable doubt, that he committed the crime of Sexual Abuse of a Child. Am. Pet. at 3-4; Pet'r's Br. at 7-31 (citing U.S. Const. amends. V, XIV). In reviewing a habeas challenge based on the sufficiency of the evidence, a federal court "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The reviewing court considers both direct and circumstantial evidence in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998). In this habeas matter, the Court "may not weigh conflicting evidence []or consider the credibility of witnesses" but must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *See id.* (internal quotation marks omitted).

Here, the sufficiency of the evidence inquiry is based on the substantive elements of the crime as defined by Oklahoma law. *See Jackson*, 443 U.S. at 309, 324 n.16. As relevant to this case, the elements of Sexual Abuse of a Child under Oklahoma law were: (1) a person responsible for the child's health, safety, or welfare; (2) willfully or

maliciously; (3) engaged in; (4) a lewd act; (5) to a child under the age of eighteen. Okla. Unif. Crim. Jury Instruction No. 4-39 (2d ed. 1996 & Supps.); Okla. Stat. tit. 21, § 843.5(F); Okla. Stat. tit. 10A, § 1-1-105(2)(b); *see* OR 180 (Jury Instruction No. 5); Pet'r's Br. at 8. In Petitioner's case the jury was specifically instructed that the "lewd act" allegedly engaged in by Petitioner was "The Lewd act of touching the vagina of K.C. with his finger." OR 180 (Jury Instruction No. 5).

Petitioner specifically contends that the evidence does not support the fourth element—i.e., that the touching of K.C.'s vagina was done in a "lewd" manner. According to Petitioner, the prosecution (or "the State") did not establish this element based upon various shortcomings in the evidence and testimony, as outlined further below. Petitioner's principal argument is that the evidence and testimony collectively showed that Petitioner had a legitimate purpose for touching K.C.'s vagina, which negated the "lewd" element of the charged offense. *See* Am. Pet. at 3-4; Pet'r's Br. at 7-31.

Petitioner raised the same claims of error to support his insufficiency-of-the-evidence argument on direct appeal as those now raised in this habeas action. *See* Pet'r's OCCA Br. (Doc. No. 17-1) at 11-34. The OCCA denied relief on the merits, stating:

> Appellant was accused of touching his four-year-old daughter's private parts in a lewd or lascivious manner. The child testified about the incident, and her testimony was corroborated by the eyewitness testimony of the child's mother, and by a police officer who heard the child relate what happened shortly afterward. The child's allegations were further corroborated by the sexual-propensity testimony of Appellant's niece, who testified that Appellant had committed a similar act against her when she was very young. Appellant offered his own innocent explanation of what

took place. Nevertheless, a rational juror could find, beyond a reasonable doubt, that Appellant was guilty of the crime charged.

OCCA Summ. Op. at 1-2 (citing *Jackson*, 443 U.S. at 319).

Because the OCCA applied the standard of *Jackson v. Virginia*, this Court's task "is limited by AEDPA to inquiring whether the OCCA's application of *Jackson* was unreasonable" or was contrary to the U.S. Supreme Court's holding in that case. *See Matthews v. Workman*, 577 F.3d 1175, 1183 (10th Cir. 2009). The OCCA was not obligated to determine whether *it* believed the evidence established Petitioner's guilt beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318. Rather, the relevant question was "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. This standard gives full responsibility to the trier of fact to "fairly" "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

As indicated by the OCCA's Summary Opinion, there was detailed testimony at trial as to the events surrounding the allegation of sexual abuse arising from events in the early evening of November 14, 2007. Petitioner's wife Christy Chandler testified that when she entered the bedroom she shared with Petitioner, Petitioner was inside the bedroom and walked toward the doorway to see who was approaching. Vol. II Trial Tr. 24, 27, 31, 48-50. Ms. Chandler stated that upon seeing her, Petitioner lay down in the bed and covered up K.C. with a blanket and his legs. Vol. II Trial Tr. 24, 31, 49-50, 51. When Ms. Chandler approached the bed and removed the blanket and pushed aside

Petitioner's legs, she saw that K.C.'s knees were drawn up, and K.C.'s underwear and shorts were pulled down to her knees. Vol. II Trial Tr. 24, 31, 33. Ms. Chandler testified that she saw an "awful," "scared" look on K.C.'s face. Vol. II Trial Tr. 31, 32, 33. Ms. Chandler stated that she asked Petitioner three times what he was doing, and each time Petitioner said, "Nothing." Vol. II Trial Tr. 31, 32, 40. According to Ms. Chandler, K.C. later pointed between her legs and agreed that her father had touched her there, stating that he used his finger, both in response to Ms. Chandler's own questioning and in response to questions relayed to K.C. by Ms. Chandler on behalf of Sergeant Scott Whitlock, the City of Oklahoma City police officer who responded and investigated on the evening of November 14, 2007. Vol. II Trial Tr. 34, 37-39, 53, 64-65; *see also id.* at 70-75.

It was undisputed that Ms. Chandler suffered from mental illness as well as a drug addiction problem in November 2007, when the alleged sexual abuse took place. Vol. II Trial Tr. 43-45, 54-58, 60-62; Vol. III Trial Tr. 32, 34-35, 47. The jury heard detailed testimony from Petitioner, Ms. Chandler, the Chandlers' friend Melony Brand, and Petitioner's father Carl Chandler regarding Ms. Chandler's mental health issues as well as Ms. Chandler's use of prescription and other drugs, including controlled substances. *See* Vol. II Trial Tr. 43-44, 54-58, 60-62; Vol. III Trial Tr. 6-7, 18, 32, 34-35, 47. Ms. Chandler's testimony at trial generally reflected that she was taking prescription medication for her mental health issues at that time and that she was not using any other drugs the night of November 14, 2007. *See* Vol. II Trial Tr. 44-45, 61. Further, Sergeant Whitlock, who spent approximately one-and-a-half hours with Ms. Chandler, testified

that Ms. Chandler did not appear to be under the influence of any intoxicant on the night of November 14, 2007. Vol. II Trial Tr. 75. Sergeant Whitlock testified that Ms. Chandler was upset, but appeared to be oriented to reality and behaving in an expected manner. Vol. II Trial Tr. 76-77.

K.C., who was six years old at the time of trial, testified that her father told her to pull down her shorts and underwear and then he touched her "private" with his finger while she was lying on the bed. Vol. II Trial Tr. 88-91. K.C. further testified that her mother came into the room and yelled at her father, but that she did not remember what her mother yelled. Vol. II Trial Tr. 91-92.

Sergeant Whitlock testified that Ms. Chandler described to him how she came upon Petitioner and K.C. in the bedroom, how Petitioner had lain on the bed and covered up K.C., and the fact that K.C.'s pants and underwear were pulled down. Vol. II Trial Tr. 72-73. Regarding the questioning of K.C. that took place in his car that evening, Sergeant Whitlock testified that when Ms. Chandler, relaying questions to K.C. on his behalf, asked K.C. if she had been touched, K.C. pointed between her legs and responded that Petitioner had touched her there with his finger. Vol. II Trial Tr. 74-75.

Melony Brand testified to certain events told to her by Ms. Chandler, specifically that when Ms. Chandler walked into the bedroom, Petitioner jumped into the bed with K.C. and K.C.'s pants were pulled down. *See* Vol. III Trial Tr. 7. Ms. Brand testified that after Ms. Chandler took the children to Ms. Brand's house on the evening of November 14, 2007, K.C. affirmed that Petitioner had touched her and then "pointed down there." Vol. III Trial Tr. 8.

Petitioner testified that he did touch K.C.'s genital region on November 14, 2007, but did so because K.C. had complained to Petitioner of itching. *See* Vol. III Trial Tr. 36-37. Ms. Brand testified that Petitioner had said that he touched K.C. to put medicine on her. Vol. III Trial Tr. 8.

Petitioner argues that Ms. Chandler's testimony lacked credibility based upon her mental illness and history of drug abuse. Am. Pet. at 3; Pet'r's Br. at 8-13. When a record supports conflicting inferences, the Court must presume that the jury "resolved any such conflicts in favor of the prosecution." *See Matthews*, 577 F.3d at 1184 (internal quotation marks omitted). The Court is "not allowed to weigh conflicting evidence or consider the credibility of witnesses" on habeas review. *See id.* (internal quotation marks omitted). Here, the jury was permitted to evaluate all of the above testimony, including as to Ms. Chandler's mental health and use of drugs, and was able to determine the weight to give to Ms. Chandler's testimony.

Petitioner additionally argues that K.C.'s testimony and statements were influenced by Ms. Chandler's accusations against Petitioner and by repeated questioning of K.C. Am. Pet. at 3; Pet'r's Br. at 13-18. This is an attack on the weight and credibility of K.C.'s testimony, and, as such, is a claim subject to only extremely limited review by a federal court in a habeas proceeding. *See Matthews*, 577 F.3d at 1184; *Parker v. Scott*, 394 F.3d 1302, 1315 (10th Cir. 2005). For example, in *Parker*, a habeas petitioner contended that there was insufficient evidence to support his conviction for child sexual abuse and specifically asserted that the victim's testimony was inconsistent and

contradictory. *See Parker*, 394 F.3d at 1315. The Tenth Circuit explained the limited review available under AEDPA for such a claim:

> To the extent [the petitioner] claims that the child gave inconsistent statements at trial and in the other interviews, his counsel had the opportunity to cross-examine the child and the other witnesses to expose the alleged inconsistencies. While the child's testimony does raise questions about the details of the assaults, none of it, standing alone or collectively, is inherently implausible. The jury was in a position to credit or discount the child's testimony and weigh the inconsistencies in light of her age and the passage of time. [The petitioner's] claims about inconsistency are primarily based on the jury's acceptance of his and the other defense witnesses' testimony over the child's. That determination, however, is distinctly within the realm of the jury, which we cannot enter on AEDPA review.

*Id.* at 1315. Here, as in *Parker*, the determination of whether K.C.'s testimony was credible in light of the possibility that she was influenced by Ms. Chandler is one that was within the province and responsibility of the assigned jury. Viewing the testimony in the light most favorable to the prosecution, the jury could have rationally found K.C.'s testimony to be credible.[5] Therefore, relief on this basis should be denied.

Petitioner also contends that K.C.'s statements during a forensic interview conducted on the night of the alleged abuse were tainted by leading questions by social worker Jill White. Am. Pet. at 3; Pet'r's Br. at 18-20. Because K.C. was under the age of thirteen years when the crime was committed, the trial court, pursuant to Title 12, Section

---

[5] Petitioner does not point to any direct evidence of undue influence by Ms. Chandler. K.C. testified that she did not remember what her mother stated, or yelled, upon entering the room during the incident. Vol. II Trial Tr. 92. K.C. also testified that Ms. Chandler, subsequent to the incident, had wanted K.C. "to say that something did not happen"—a statement that reasonably could have been viewed by the jury as indicating that Ms. Chandler had asked K.C. to testify that the sexual abuse had not occurred but also is reasonably subject to different interpretations. Vol. II Trial Tr. 85-86.

2803.1 of the Oklahoma Statutes,[6] held a hearing regarding the admissibility of K.C.'s statements—including as reflected in the video of the forensic interview and hearsay testimony by other witnesses—prior to admitting them at trial.  *See* Vol. I Trial Tr. 170-217; State's Trial Ex. 1 (Doc. No. 19).  The trial court, finding that there were sufficient indicia of reliability to render the statements trustworthy, allowed the statements to be admitted into evidence and introduced through testimony.  Vol. I Trial Tr. 217; Okla. Stat. tit. 12, § 2803.1(A); *see also* OR 20, 21 (State's notices of intent to use hearsay statements).  Although Petitioner argued against admission of K.C.'s statements at this

---

[6] Section 2803.1 of Title 12 of the Oklahoma Statutes states in relevant part:

A. A statement made by a child who has not attained thirteen (13) years of age . . . , which describes any act of physical abuse against the child . . . or any act of sexual contact performed with or on the child . . . by another, is admissible in criminal and juvenile proceedings in the courts in this state if:

1. The court finds, in a hearing conducted outside the presence of the jury, that the time, content and totality of circumstances surrounding the taking of the statement provide sufficient indicia of reliability so as to render it inherently trustworthy.  In determining such trustworthiness, the court may consider, among other things, the following factors: the spontaneity and consistent repetition of the statement, the mental state of the declarant, whether the terminology used is unexpected of a child of similar age or of an incapacitated person, and whether a lack of motive to fabricate exists; and

2. The child . . . either:

a. testifies or is available to testify at the proceedings in open court or through an alternative method pursuant to the provisions of the Uniform Child Witness Testimony by Alternative Methods Act or Section 2611.2 of this title, or

b. is unavailable as defined in [Okla. Stat. tit. 12, § 2804] as a witness. When the child . . . is unavailable, such statement may be admitted only if there is corroborative evidence of the act.

Okla. Stat. tit. 12, § 2803.1(A).

hearing, Petitioner did not object at trial to the admission into evidence and viewing of Jill White's recorded interview of K.C. Vol. I Trial Tr. 203-05, 207-09, 211-13; Vol. II Trial Tr. 108. Petitioner did not object to any of Ms. White's live testimony at trial and did not argue on direct appeal that admission of the video or of Ms. White's testimony was reversible error. Vol. II Trial Tr. 100-15; Pet'r's OCCA Br.; *see Stouffer v. State*, 147 P.3d 245, 263 (Okla. Crim. App. 2006); *Simpson v. State*, 876 P.2d 690, 693 (Okla. Crim. App. 1994).

In a habeas action, a federal court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68. Even assuming the trial court erred in applying the Oklahoma evidence code, "federal habeas corpus relief does not lie for errors of state law" such as those raised by Petitioner. *See id.* at 67 (internal quotation marks omitted). Petitioner does not submit, and the record does not demonstrate, that any independent violation of a federal constitutional right arose from the trial court's admission of evidence regarding K.C.'s statements. Further, Petitioner's argument regarding the consistency of K.C.'s statements goes to the weight and credibility of witness testimony, a determination within the province and responsibility of the jury. *See Matthews*, 577 F.3d at 1184.

Petitioner further contends that the testimony of physician assistant Kathleen Hatelid, who examined K.C. in late November 2007, was irrelevant and unfairly prejudicial. *See* Am. Pet. at 3; Pet'r's Br. at 20-22. He also argues that the probative

13

value of "other crimes" evidence—specifically, the testimony of Petitioner's niece—was substantially outweighed by the danger of unfair prejudice. *See* Am. Pet. at 3; Pet'r's Br. at 22-24. These arguments were expressly offered in support of Petitioner's insufficiency-of-the-evidence argument on direct appeal rather than as separate propositions of error. *See* Pet'r's OCCA Br. at 24-28. To the extent Petitioner's contentions are now raised as independent claims, such claims are challenges to the trial court's evidentiary rulings, which generally are not cognizable on federal habeas review. *See Romano v. Gibson*, 239 F.3d 1156, 1166 (10th Cir. 2001) ("[S]tate evidentiary determinations ordinarily do not present federal constitutional issues."). To the extent these contentions are now presented to support Petitioner's federal insufficient-evidence habeas claim, the Court presumes—because Petitioner raised the same arguments on direct appeal—that the OCCA rejected them on the merits in denying relief. *See* Pet'r's OCCA Br. at 24-28; OCCA Summ. Op. at 1-2. A state court's summary opinion denying a federal claim is presumed to have been issued on the merits, absent any indication to the contrary, even if no basis in state or federal law is cited in support of the opinion. *See Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011); *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) (holding presumption noted above is rebuttable in limited circumstances). The undersigned thus has considered Petitioner's contentions regarding the physician assistant's testimony and the cited "other crimes" evidence, as well as the specified testimony and evidence (discussed in more detail *infra*), in determining whether habeas relief is warranted based upon a lack of sufficient evidence to convict Petitioner. *See*

Pet'r's Br. at 20-24; Vol. II Trial Tr. 121-45 (testimony of Kathleen Hatlelid, PA), 154-60 (testimony of Petitioner's niece Roberta Shoemaker).

Petitioner's primary argument in Ground One is that the State failed to prove that Petitioner's touching of K.C. was lewd or lascivious, a required element of the alleged crime of Sexual Abuse of a Child. Am. Pet. at 3; Pet'r's Br. at 24-31; *see* OR 180 (Jury Instruction No. 5). Under Oklahoma law, the terms lewd and lascivious "signify conduct which is lustful and which evinces an eagerness for sexual indulgence." *Huskey v. State*, 989 P.2d 1, 5 (Okla. Crim. App. 1999); *see Reeves v. State*, 818 P.2d 495, 504 (Okla. Crim. App. 1991); *accord* OR 181 (Jury Instruction No. 6). In a federal habeas challenge to the sufficiency of the evidence, the parameters and elements of an offense are determined under state law, which the federal court is not permitted to reinterpret. *Tillman v. Cook*, 215 F.3d 1116, 1131-32 (10th Cir. 2000).

Petitioner argued to the jury and on appeal that, as K.C.'s primary caretaker, he had a legitimate purpose in touching K.C.'s genital region—to ascertain proper treatment of K.C.'s alleged itching. *See* Vol. III Trial Tr. 35-37, 43, 46-47, 48-51; Pet'r's OCCA Br. at 8, 28-30. According to Ms. Chandler and Petitioner, K.C. had previously complained of itching in her genital region, but Ms. Chandler testified that she could not remember K.C. complaining about such itching during the week of the alleged abuse. Vol. II Trial Tr. 52-53, 63-64; Vol. III Trial Tr. 50. Physician assistant Kathleen Hatlelid noted that Ms. Chandler reported that K.C. had a urinary tract infection in the summer of 2007. Vol. II Trial Tr. 131. Ms. Hatlelid testified that she examined K.C. on November 27, 2014, thirteen days after the alleged incident, but found no indication of any such

15

infection.  Vol. II Trial Tr. 140-41.  K.C. testified that Petitioner did not have any medicine that he put on her private area on the day of the incident.  *See* Vol. II Trial Tr. 96.  Ms. Chandler testified she did not see any medication, cream, or washcloth in the bedroom when she encountered Petitioner and K.C.  Vol. II Trial Tr. 40.  Petitioner stated that he had not yet obtained the medication, which he said was in an adjacent bathroom. Vol. III Trial Tr. 43, 51-52.  Ms. Chandler and Petitioner both testified that Petitioner covered up K.C. and that, when Ms. Chandler asked what Petitioner was doing in the bedroom with K.C.'s shorts and underwear pulled down, Petitioner responded "nothing." *See* Vol. II Trial Tr. 24, 31-32; Vol. III Trial Tr. 37, 39.  Petitioner asserted, however, that he did not have the chance to explain his actions.  Vol. III Trial Tr. 39, 46-47.

Petitioner asserts that the jury was confused as to the lewdness aspect of the charged offense.  Pet'r's Br. at 28-29.  While the jury was deliberating, they relayed a question to the trial judge asking, among other things, for the definitions of "lewd" and "lascivious."  Vol. III Trial Tr. 97.  The trial judge informed both defense counsel and the prosecutor of the jury's request.  Vol. III Trial Tr. 97.  Neither attorney objected when the trial judge proposed to answer the jury's question by referring the jury to Jury Instruction Number 6, which the judge did.[7]  Vol. III Trial Tr. 97-98.  That instruction, reflecting the law as set forth by the OCCA in *Huskey v. State*, stated: "The words 'lewd' and

---

[7] Although this question and response presumably were communicated in writing, no note from either the jury or the trial judge is contained in the state-court record before the Court.

'lascivious' have the same meaning and signify conduct which is lustful and which evinces an eagerness for sexual indulgence." OR 181; *see Huskey*, 99 P.2d at 5.

The mere fact that the jury sent a question to the trial judge does not render the evidence insufficient to support the jury's guilty verdict. *See Smallwood v. Gibson*, 191 F.3d 1257, 1280 (10th Cir. 1999) ("[T]here is nothing inherently disturbing or prejudicial in a juror submitting a question or request to the court."). Petitioner refers to the question as evidence of the jury's confusion, but Petitioner does not allege that the judge's response was erroneous or deprived Petitioner of requisite due process. *Cf. Mollett v. Mullin*, 348 F.3d 902, 907-08, 916 (10th Cir. 2003) (affirming grant of habeas relief on due process claim where the attorneys were not informed of jury's question and trial judge's response to jury's question did not explain the distinction between life imprisonment and life imprisonment without parole under Oklahoma law). "[A] question from the jury must be answered in open court and only after providing counsel an opportunity to be heard." *Smallwood*, 191 F.3d at 1279 (internal quotation marks omitted). Here, prosecution and defense counsel were made aware of the jury's inquiry, but neither attorney requested further clarification, suggested a response, or objected to the judge's proposed response. *See* Vol. III Trial Tr. 97-98; *Smallwood*, 191 F.3d at 1280; *cf. Johnson v. Gibson*, 254 F.3d 1155, 1165 (10th Cir. 2001) (noting that a trial court may properly answer a jury's specific question regarding sentencing by referring jury to its instructions); *United States v. Powell*, 226 F.3d 1181, 1193 (10th Cir. 2000) (approving trial court's decision to refer jury to its original instructions). Further, as to confusion, there were no additional questions from the jury regarding the lewdness

element, or other elements, following the trial court's response; rather, the jury later returned with the guilty verdict. Vol. III Trial Tr. 98; OR 196.

The jury was specifically and properly instructed that a necessary element of the relevant offense is that the child be looked upon, touched, mauled, or felt "in any lewd or lascivious manner" and was specifically and properly instructed on the meaning of those terms under Oklahoma law. OR 180, 181 (Jury Instructions 5, 6); Okla. Crim. Jury Instruction No. 4-39; *Huskey*, 989 P.2d at 5; Okla. Stat. tit. 21, § 843.5(E), (F). Considering the testimony and evidence discussed above, and viewing all reasonable inferences therefrom in favor of the prosecution, a rational trier of fact could find beyond a reasonable doubt that Petitioner's undisputed touching of K.C.'s vagina was performed in a lewd manner. *See Parker*, 394 F.3d at 1315 ("The jury had the opportunity to hear [Petitioner] and the other defense witnesses testify about their version of the facts, but concluded that [Petitioner] had sexually abused the child."). Therefore, the OCCA's rejection of Petitioner's challenge to the sufficiency of the evidence was not contrary to or an unreasonable application of the governing *Jackson* standard. *See* OCCA Summ. Op. at 1-2; 28 U.S.C. § 2254(d)(1); *Jackson*, 443 U.S. at 319. Petitioner is not entitled to habeas relief on Ground One.

### B. Ground Two: Prosecutorial Misconduct

Petitioner next seeks habeas relief on the basis that the prosecutor's arguments misstated the evidence of the case and the applicable burden of proof, thereby depriving Petitioner of due process of law. Am. Pet. at 4; Pet'r's Br. at 31-38 (citing U.S. Const. amend. XIV). According to Petitioner, the State improperly shifted the burden of proof

onto Petitioner through remarks the prosecutor made to the jury and through unfair use of propensity evidence. Pet'r's Br. at 31-33, 37-38. Petitioner also argues that the prosecutor improperly stated that there was no evidence that K.C. had any itching or vaginal infection in November 2007 or that Christy Chandler had been hallucinating on November 14, 2007. Pet'r's Br. 34-36. Petitioner additionally contends that the prosecutor erroneously stated that K.C. had been living with her mother and that K.C. had said, "[M]y daddy did bad things to me." Pet'r's Br. at 36-37.

Petitioner raised a prosecutorial misconduct argument with the same supporting contentions to the OCCA on direct appeal. *See* Pet'r's OCCA Br. at 35-41. The OCCA rejected this claim on the merits, stating:

> Appellant lists several instances of alleged prosecutor misconduct. None of these comments were met with a timely objection, so we review them only for plain error. We find no plain error here. By suggesting Appellant was guilty because he had no legitimate purpose for touching his daughter's genitals, the prosecutor was not attempting to shift the burden of proof; she was asking the jurors to apply common sense in considering the evidence that contradicted Appellant's testimony. The prosecutor's comments on the weight to be given to the sexual-propensity testimony of another alleged victim of Appellant conformed to the law and instructions on the use of such evidence. The prosecutor's comment that there was "no evidence" supporting Appellant's defense would have been fairly interpreted by the jurors to mean there was no evidence to corroborate Appellant's testimony. Disputes about the victim's mother's ability to rationally observe and relate what she saw were largely irrelevant, because Appellant admitted the suspicious-looking conduct, and simply offered an innocent explanation for it. Any misstatements in the prosecutor's closing were minor and, in our view, could not have affected the outcome of the trial. None of the prosecutor's comments oversold the primary evidence against Appellant: the testimony of his daughter. When viewed in the context of the entire trial, we cannot say these comments worked to deny Appellant a fair trial.

OCCA Summ. Op. at 2-3 (citations omitted).

On habeas review, this Court considers whether the alleged prosecutorial misconduct deprived the Petitioner of a fair trial or another specific constitutional right:

> Ordinarily, a prosecutor's misconduct will require reversal of a state court conviction only where the remark sufficiently infected the trial . . . to make it fundamentally unfair, and, therefore, a denial of due process. Nonetheless, when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair.

*Dodd*, 753 F.3d at 990 (internal quotation marks and citation omitted). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). *See also Matthews*, 577 F.3d at 1186 n.4 (refusing to find a claim procedurally defaulted when the OCCA had reviewed for plain error because the Tenth Circuit has held that such a state-court decision "is a merits determination entitled to ordinary AEDPA deference").

### 1. Statements and Use of Evidence Relating to the Burden of Proof

Because only Petitioner's argument regarding the State's burden of proof arguably implicates the second category of error outlined in *Dodd*—i.e., a deprivation of a specific constitutional right—the undersigned addresses this argument first. *See Dodd*, 753 F.3d at 990-91 (analyzing claim that State improperly characterized its burden of proof to determine if the misconduct "effectively deprived the defendant of a specific constitutional right"); *Morris v. Workman*, 382 F. App'x 693, 696 (10th Cir. 2010) ("Where prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence, a petitioner may obtain relief by demonstrating that the

constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right." (internal quotation marks omitted)).

Petitioner asserts that the State improperly shifted the burden of proof during closing argument by asking the jury to draw inferences from an absence of evidence. In support of this contention, Petitioner first points to the third sentence of the following statement:

> Ladies and Gentlemen, there are at least two other instructions in the packet that tell you that you are allowed to draw reasonable inferences. Tells you to use your common sense. If you have no legitimate purpose for touching a child's vagina you can infer it is for sexual indulgence. We submit to you [that] the evidence shows that he had no legitimate purpose.

Vol. III Trial Tr. 58-59; Pet'r's Br. at 31-32. Petitioner argues that the testimony of Ms. Chandler and K.C. could not support an inference that Petitioner's testimony was false and that Petitioner was guilty. Pet'r's Br. at 33.

It is well established that during closing argument a prosecutor may properly "comment on the circumstances of the crime made known to the jury during trial" and that a prosecutor "possesses reasonable latitude in drawing inferences from the record." *Hooper v. Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002). Here, the prosecutor did not improperly argue that Petitioner had failed to produce evidence or to make a necessary showing of proof. Petitioner had testified that K.C. "always" sought attention from him for itching, including on November 14, 2007; but Petitioner's testimony was contradicted to a significant degree by K.C.'s testimony and also was not corroborated by Ms. Chandler. *Compare* Vol. III Trial Tr. 35-36, 43, 48-49, *with* Vol. II Trial Tr. 95-96, 99, *and* Vol. II Trial Tr. 63-64. "Considering the challenged statement[] in context, . . . the

prosecutor merely argued that the evidence did not support [Petitioner's] defense theory." *See Morris*, 382 F. App'x at 696. Moreover, the jury was instructed on the presumption of innocence and that the State had the burden to establish Petitioner's guilt beyond a reasonable doubt. OR 178 (Jury Instruction No. 3);[8] *cf. Morris*, 382 F. App'x at 696 (rejecting contention that burden of proof was shifted where "the prosecutor reiterated the presumption of innocence and the government's burden of proof several times during closing"); OR 179 (Jury Instruction No. 4).[9]

Second, Petitioner points to the prosecutor's statement during closing argument: "How unlucky can you be to be accused two times of the same type of heinous act?" Pet'r's Br. at 33 (citing Vol. III Trial Tr. 61). Petitioner argues that this statement "led the jurors to base their verdict of guilt[y] on propensity evidence, which was legally erroneous and extremely unfair." Pet'r's Br. at 33. Roberta Shoemaker, Petitioner's niece, testified that in 1995, when she was about seven years old, she was living in the same house as Petitioner and Ms. Chandler. Vol. II Trial Tr. 154-55. Ms. Shoemaker

---

[8] Jury Instruction Number 3 stated in relevant part:

> The defendant is presumed innocent of the crime charged, and the presumption continues unless, after consideration of all the evidence, you are convinced of his guilt beyond a reasonable doubt. The State has the burden of presenting the evidence that establishes guilt beyond a reasonable doubt.

> The defendant must be found not guilty unless the State produces evidence which convinces you beyond a reasonable doubt of each element of the crime.

OR 178; *accord* Okla. Unif. Crim. Jury Instruction No. 10-4.

[9] Jury Instruction Number 4 stated in relevant part: "You are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified when considered with the aid of the knowledge which you each possess in common with other persons." OR 179; *accord* Okla. Unif. Crim. Jury Instruction No. 9-1.

stated that she was asleep on the couch in the living room and felt someone touching her in her genital area, on top of her underwear. Vol. II Trial Tr. 156. Ms. Shoemaker "slapped them away" and saw Petitioner run to the kitchen. Vol. II Trial Tr. 156, 159.

Relying on *James v. State*, 204 P.3d 793 (Okla. Crim. App. 2009), the trial court, over Petitioner's objection, permitted Ms. Shoemaker's testimony to be presented by the State for the purpose of showing a common scheme or plan by Petitioner. *See* Vol. I Trial Tr. 219-25; Vol. II Trial Tr. 146-54; Okla. Stat. tit. 12, §§ 2404(B), 2413, 2414; OR 101-02 (State's Notice of Intent to Offer Evidence of Other Sexual Assaults); *James*, 204 P.3d at 796-98. Immediately following Ms. Shoemaker's testimony, the jury was specifically instructed that such evidence could be considered only for this limited purpose:

> Evidence has now been received that the Defendant had allegedly committed an offense other than that charge[d] in the Information. You may not consider this evidence as proof of innocence or guilt of the Defendant of this specific charge, this charge in this Information. This evidence has been received solely on the issue of the Defendant's common scheme or plan. This evidence is to be considered by you for only the limited purpose for which it was received, okay?

Vol. II Trial Tr. 160-61; *accord* Okla. Unif. Crim. Jury Instruction No. 9-9. The record reflects that a substantially identical cautionary instruction was also given to the jury in the final instructions after the close of all the evidence. Vol. III Trial Tr. 55; OR 187 (Jury Instruction No. 11).

The prosecutor's rhetorical question as to whether Petitioner was twice "unlucky," to which no objection was raised, may reasonably be viewed as invoking the State's theory that the two offenses involving female children were part of a common scheme or

plan.  *See* Vol. III Trial Tr. 61; Okla. Stat. tit. 12, § 2404(B); *cf. James*, 204 P.3d at 798

("The particulars of the prior crime showed a visible connection with the instant charges,

and demonstrated a common scheme to take sexual advantage of very young girls that

were placed in his trust and care.").  The remark was not contrary to, and did not direct

the jury to disregard, the limiting instruction they twice received as to Ms. Shoemaker's

testimony or to in some fashion shift the burden of proof to Petitioner rather than the

State.  *Cf. James v. Martin*, 567 F. App'x 594, 597-98 (10th Cir. 2014) (denying a

certificate of appealability on denial of habeas relief when petitioner had not shown that

admission of evidence of a previous child molestation offense violated his right to due

process and a fair trial and the trial court "had instructed the jury not to use the evidence

as proof of guilt").  "More than once, the trial court cautioned the jury on the limited use

of such evidence." *James*, 204 P.3d at 798.

For the reasons discussed above, the OCCA's holding—that the prosecutor's

"legitimate purpose" and "unlucky" remarks were simply "asking the jurors to apply

common sense in considering the evidence that contradicted Appellant's testimony" and

"conformed to the law and instructions"—was neither contrary to nor an unreasonable

application of clearly established federal law.  *See* OCCA Summ. Op. at 2; 28 U.S.C. §

2254(d)(1); *Dodd*, 753 F.3d at 982, 990-91; *Morris*, 382 F. App'x at 696; *Delgado v.

Barreras*, No. 97-2007, 1997 WL 785525, at *2 (10th Cir. Dec. 22, 1997) (rejecting

habeas claim based on prosecutorial misconduct where "the prosecutor's remarks were

not a direct statement on the presumption of innocence" and "the defense made no

objection").  Relief on this basis should be denied.

## 2.  Other Alleged Misconduct

Petitioner points to several other remarks made by the prosecutor that allegedly misstated the evidence and denied Petitioner a fair trial.  *See* Pet'r's Br. at 33-38.

> Because Defendant's remaining claims of prosecutorial misconduct do not allege the invasion of a specific constitutional right, he must show that the alleged misconduct sufficiently infected the trial . . . to make it fundamentally unfair, and, therefore, a denial of due process.  [T]his is a high hurdle.  And it is even higher here because Defendant must show that the OCCA's rejection of his claim was unreasonable under § 2254(d).

*Dodd*, 753 F.3d at 991 (alteration in original) (citations and internal quotation marks omitted).

Petitioner complains that the prosecutor misstated the evidence in remarking, "Absolutely no evidence of any type of itching or yeast infection on November of 2007," because Petitioner himself testified that K.C. complained of itching and hurting on November 14, 2007, the date of the alleged abuse.  Pet'r's Br. at 34; Vol. III Trial Tr. 94; *see* Vol. III Trial Tr. 35-36, 43, 48-49.  As noted above, the OCCA rejected this argument and held: "The prosecutor's comment that there was 'no evidence' supporting Appellant's defense would have been fairly interpreted by the jurors to mean there was no evidence to corroborate Appellant's testimony."  OCCA Summ. Op. at 2-3.  In contrast to Petitioner's own account of that day's events, Ms. Chandler testified that K.C. had not complained about itching during the week of the incident.  Vol. II Trial Tr. 64.  K.C. denied ever having problems with itching in her "private" or genital region.  Vol. II Trial Tr. 99.  Kathleen Hatlelid, the physician assistant, testified that on November 27, 2007, K.C. showed no signs of any urinary tract or yeast infection in her vaginal area.

Vol. II Trial Tr. 140-41.  Ms. Hatlelid testified that she was told "no" when she asked questions at that time about whether K.C. was itching in her vaginal area.  Vol. II Trial Tr. 141.

Petitioner further complains that the prosecutor misrepresented the evidence when she stated to the jury, "There is no evidence that [Christy Chandler] was under the influence of anything or hallucinating or anything at that time," and "You have not heard any testimony from Melony Brand or the, Defendant's side that on that particular day that she was hallucinating."  Pet'r's Br. at 35; Vol. III Trial Tr. 62, 63.  In addressing this contention, the OCCA held: "Disputes about the victim's mother's ability to rationally observe and relate what she saw were largely irrelevant, because Appellant admitted the suspicious-looking conduct, and simply offered an innocent explanation for it."  OCCA Summ. Op. at 3.  Petitioner cites testimony regarding Ms. Chandler's undisputed mental illness and addiction history.  *See* Pet'r's Br. at 35; *see, e.g.*, Vol. II Trial Tr. 43-44, 54-58, 60-62; Vol. III Trial Tr. 32, 34-35, 47.  Petitioner, however, points to no evidence that Ms. Chandler was hallucinating or under the influence of an intoxicant on the relevant date of November 14, 2007, although he refers to testimony regarding her past drug use generally.  *See* Pet'r's Br. at 36 (citing Vol. II Trial Tr. 61).  Ms. Chandler acknowledged having mental health issues, but answered in the affirmative when asked whether, in November 2007, she was cooperating and taking medication that helped with her mood and hallucinations.  Vol. II Trial Tr. 43-45.  Ms. Chandler specifically denied being on drugs the night of November 14, 2007.  Vol. II Trial Tr. 61.  In addition, Sergeant Whitlock testified that Ms. Chandler did not appear to be under the influence of any

intoxicant on the night of November 14, 2007, and that Ms. Chandler appeared oriented to reality and behaving as he would expect.  Vol. II Trial Tr. 75-77.

Petitioner additionally contends that the State misstated the evidence in arguing:

> [K.C.] lived with her mother for over two years.  There has been nobody indoctrinating that child.  She told you that even when she was told to say that it didn't happen, she said but my daddy did bad things to me.  "I told the truth."

Pet'r's Br. at 36-37; *see* Vol. III Trial Tr. 93-94; Vol. II Trial Tr. 86 (K.C. testifying, "I told the truth.").  Petitioner objects that this statement is inaccurate because (1) at the time of trial K.C. had *not* lived with her mother (or her father) for two years; and (2) K.C. did not state, "My daddy did bad things to me."  Pet'r's Br. at 36-37.  The OCCA stated in relevant part: "Any misstatements in the prosecutor's closing were minor and, in our view, could not have affected the outcome of the trial."  OCCA Summ. Op. at 3.

Regarding Petitioner's first proposition, it is clear from the context that the prosecutor intended to state that K.C. had *not* lived with her mother for over two years— hence, K.C.'s mother could not have been "indoctrinating" her during this period.  *See* Vol. III Trial Tr. 93; *see also* Vol. II Trial Tr. 23 (Ms. Chandler testifying before the jury, in February 2007, that K.C. had not lived with her since approximately the time of the incident at issue, in November 2007).  Petitioner fails to explain how the prosecutor's misstatement was significant or prejudicial or how the error caused him to be deprived of due process or of a fundamentally fair trial.  *Cf. Dodd*, 753 F.3d at 993 ("[E]ven if the prosecutor misidentified which window was ajar, Defendant cannot explain why the issue mattered very much.").

Regarding the second proposition, Petitioner is correct that K.C. did not explicitly testify that "my daddy did bad things to me." *See* Pet'r's Br. at 37. However, the State correctly described that K.C. had testified that her mother wanted her to say that "something did not happen," and when asked on the stand what did happen, K.C. had responded, "I told the truth." Vol. II Trial Tr. 85-86. While other interpretations might be drawn regarding K.C.'s testimony as to what Ms. Chandler did not want her to say, the interpretation argued by the prosecutor was reasonable. In any event, a prosecutor's closing arguments "'are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear.'" *Dodd*, 753 F.3d at 992 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646-47 (1974)). Petitioner again fails to show that the prosecutor's statements, to which defense counsel failed to object, rendered Petitioner's trial void of due process or fundamentally unfair. *See id.* at 991 (noting that failure to object is relevant to assessment of fundamental unfairness). The jury had been instructed that the evidence to be considered in determining whether the State had established guilt beyond a reasonable doubt consisted of the witnesses' sworn testimony, stipulations made by the attorneys, and admitted exhibits—notably omitting arguments of counsel as evidence that may be considered. OR 178 (Jury Instruction No. 3); *see also* Vol. II Trial Tr. 4-6 (commencing trial with evidentiary instructions to jury, including admonition that "[o]pening statements are not evidence"). Juries are presumed to follow their instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Lucero*, 133 F.3d at 1309.

To establish a constitutional due process violation warranting reversal of a jury's verdict, the prosecutor's disputed comments "must so infect the entire proceedings as to impede the jury's ability to judge the evidence fairly." *Banks v. Workman*, 692 F.3d 1133, 1149 (10th Cir. 2012) (internal quotation marks omitted). Viewing Petitioner's allegations of prosecutorial misconduct as a whole, *see Dodd*, 753 F.3d at 994, Petitioner has not shown that the prosecutor's miscues resulted in a fundamentally unfair trial. The prosecutor was permitted to comment on the circumstances of the crime from the standpoint of the State and to draw reasonable inferences from the record. *See Dodd*, 753 F.3d at 992; *Hooper*, 314 F.3d at 1172. In the context of the entire trial—including the strength of the evidence against Petitioner, the instructions given to the jury, and Petitioner's own defensive arguments—"none of the prosecutor's comments were of sufficient magnitude to influence the jury's decision." *See Smallwood*, 191 F.3d at 1276.

Having reviewed the transcript, record, and relevant authorities, the undersigned concludes that the proceedings against Petitioner were not rendered fundamentally unfair by any of the challenged remarks of the State or all of those remarks in combination. In addressing these remarks, the OCCA concluded: "None of the prosecutor's comments oversold the primary evidence against Appellant: the testimony of his daughter. When viewed in the context of the entire trial, we cannot say these comments worked to deny Appellant a fair trial." OCCA Summ. Op. at 3. This rejection of Petitioner's prosecutorial misconduct claim on the merits was not an unreasonable application of or contrary to clearly established federal law. *See* 28 U.S.C. § 2254(d)(1); *Dodd*, 753 F.3d

at 991-94; *Smallwood*, 191 F.3d at 1276; *Banks*, 692 F.3d at 1149. Petitioner has failed to clear his high hurdle, and relief on this claim should be denied.

## C.   Ground Three: Denial of Motion for New Trial on Appeal

On his third ground for relief, Petitioner argues that the OCCA improperly denied his Motion for New Trial, which was filed on November 9, 2010, during the pendency of his direct appeal. *See* Am. Pet. at 5; Pet'r's Br. at 38-40. In the Motion, Petitioner sought a new trial on the basis of newly discovered evidence in the form of four affidavits allegedly attacking the credibility of Christy Chandler. *See* Pet'r's Mot. New Trial (Doc. No. 17-4). Petitioner attached these four affidavits to his Motion. *See* Pet'r's Mot. New Trial at 7 (affidavit of Timothy Risner executed August 8, 2010), 8 (affidavit of Jessica Cresswell executed June 4, 2010), 9 (affidavit of Jeannie Falconer executed June 4, 2010), 10 (affidavit of John Cresswell executed August 8, 2010). Petitioner asserts that the failure to afford him a new trial based on this evidence amounts to a denial of his rights to due process and to a fair trial. Pet'r's Br. at 38-40 (citing U.S. Const. amends. V, VI, XIV).

The OCCA denied the Motion for New Trial as untimely filed. The OCCA explained that as a general matter, "[a] defendant may file a motion for new trial when 'new evidence is discovered, material to the defendant, and which he could not with reasonable diligence have discovered before the trial.' . . . . Appellant has not even claimed the affiants and their information could not have been discovered before trial." OCCA Summ. Op. at 3-4 (quoting Okla. Stat. tit. 22, § 952); *see Campbell v. Workman*, No. CIV-09-174-C, 2010 WL 1372540, at *27 (W.D. Okla. Jan. 28, 2010) (report and

recommendation of Couch, J.) ("[U]nder Oklahoma law a new trial may be granted in very limited and explicit circumstances."), *adopted*, 2010 WL 1372538 (W.D. Okla. Mar. 31, 2010), *appeal dismissed*, 386 F. App'x 809 (10th Cir. 2010). More specifically, the OCCA noted that pursuant to Title 22, Section 953 of the Oklahoma Statutes, a motion for new trial "must be filed within three months after the evidence in question has been discovered" but that Petitioner's affidavits were "dated over three months before the Motion for New Trial was filed." OCCA Summ. Op. at 3, 4; *see* Okla. Stat. tit. 22, § 953;[10] Pet'r's Mot. New Trial at 1, 7-10 (reflecting that the latest affidavits were executed on August 8, 2010, but the Motion was not filed until November 9, 2010).

Respondent argues that Petitioner's third ground is procedurally barred from review by this Court. *See* Resp. (Doc. No. 17) at 24-28. A federal habeas claim may be barred by a petitioner's procedural default in state court "pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "[T]he [independent and adequate state ground] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-30.

The OCCA's denial of the Motion for New Trial on direct appeal was based on both an independent and an adequate state procedural ground. The OCCA's imposition of a procedural bar of untimeliness was an "independent" state ground because it was

---

[10] Title 22, Section 953 of the Oklahoma Statutes provides in relevant part: "A motion for a new trial on the ground of newly discovered evidence may be made within three (3) months after such evidence is discovered but no such motion may be filed more than one (1) year after judgment is rendered . . . ." Okla. Stat. tit. 22, § 953.

"separate and distinct from federal law" and "the exclusive basis for the state court's holding." *See Maes v. Thomas*, 46 F.3d 979, 985 (10th Cir. 1995); OCCA Summ. Op. at 3-4; Okla. Stat. tit. 22, § 953. Regarding the adequacy prong, "[a] state court finding of procedural default is adequate if it is strictly or regularly followed." *Maes*, 46 F.3d at 986 (internal quotation marks omitted). Stated differently, the test of a procedural bar's adequacy "is whether the state court's actual application of the particular procedural default rule to all similar claims has been evenhanded in the vast majority of cases." *Id.* (alteration and internal quotation marks omitted); *Cannon v. Gibson*, 259 F.3d 1253, 1268 (10th Cir. 2001). The fact that a state court may have overlooked the procedural bar in "an occasional act of grace" does not, however, render the procedural bar inadequate. *Cannon*, 259 F.3d at 1268 (internal quotation marks omitted).

The United States District Court for the Eastern District of Oklahoma has thoroughly analyzed the primary statutory provision at issue here and found that it was "adequate" as well as independent "because it is applied evenhandedly over the vast majority of cases." *See Tanner v. Mullin*, No. CIV-06-232-RAW, 2008 WL 4490022, at *3-4 (E.D. Okla. Sept. 29, 2008) (denying habeas relief where the state court's denial of motion for new trial was premised upon application of Section 953), *appeal dismissed*, 319 F. App'x 744 (10th Cir. 2009); *accord Ochoa v. Gibson*, No. CIV-99-538-R, 2001 WL 36519079, at *13-14 (W.D. Okla. Dec. 19, 2001) (holding that the OCCA's denial of motion for new trial and postconviction relief, on grounds including untimeliness under Section 953, constituted default "on adequate and independent state law grounds"), *aff'd sub nom. Ochoa v. Workman*, 451 F. App'x 718 (10th Cir. 2011). The *Tanner* court cited

multiple published cases in which the OCCA applied Section 953 in refusing to grant untimely requests for new trials.[11]  Following a careful review, the undersigned agrees with the reasoning of the *Tanner* court and concludes that the OCCA's rejection of Petitioner's Motion for a New Trial was based upon an adequate and independent state procedural ground.

As a result, federal habeas corpus review of Petitioner's third ground for relief is precluded absent a showing by Petitioner of either: (1) cause for the default and actual prejudice, or (2) that a fundamental miscarriage of justice will result if Petitioner's claim is not considered.  *See Coleman*, 501 U.S. at 750; *Hale v. Gibson*, 227 F.3d 1298, 1330 (10th Cir. 2000).  "Cause" under the cause-and-prejudice analysis "must be something *external* to the petitioner, something that cannot fairly be attributed to him."  *Coleman*, 501 U.S. at 752.  Petitioner does not deny that his Motion for a New Trial was untimely under Section 953 and has offered no explanation for the tardy submission—let alone a reason that is external to, and not fairly attributable to, Petitioner.  Nor has Petitioner raised any federal habeas claim or alleged any facts that would, if true, serve as cause to excuse the procedural default.  *See Coleman*, 501 U.S. at 753-54; Pet'r's Br. at 38-40.  Absent a showing of cause, there is no need for the Court to consider the existence of actual prejudice.  *See Steele v. Young*, 11 F.3d 1518, 1522 n.7 (10th Cir. 1993).

---

[11] The cited cases include: *Anderson v. State*, 992 P.2d 409, 425 (Okla. Crim. App. 1999); *Ullery v. State*, 988 P.2d 332, 347 & nn.41-43 (Okla. Crim. App. 1999); *Ochoa v. State*, 963 P.2d 583, 590 n.5 (Okla. Crim. App. 1998); *Dean v. State*, 778 P.2d 476, 478 (Okla. Crim. App. 1989); *Owens v. State*, 706 P.2d 912, 913 (Okla. Crim. App. 1985); *Leigh v. State*, 698 P.2d 936, 939 (Okla. Crim. App. 1985).  *See Tanner*, 2008 WL 4490022, at *3.

As Petitioner has not shown cause and prejudice to excuse his procedural default, he must show that a fundamental miscarriage of justice will result absent consideration of his claims. *See Coleman*, 501 U.S. at 750; *Steele*, 11 F.3d at 1522. The fundamental miscarriage of justice exception is "extremely narrow" and "implicated only in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993) (internal quotation marks omitted). To prevail, Petitioner must identify evidence that "affirmatively demonstrate[s] his innocence." *See id.*; *Steele*, 11 F.3d at 1522 (noting that a petitioner must supplement his constitutional claim with "a colorable showing of factual innocence" for the exception to be available).

Petitioner argues that the affidavits attached to the Motion for New Trial relate directly to Christy Chandler's credibility, and thereby the truth of Ms. Chandler's allegations of abuse. *See* Pet'r's Br. at 38-40. Petitioner does not argue or demonstrate, however, that relief on this ground would demonstrate his actual innocence of the charge of Sexual Abuse of a Child. Nor would the record support such a claim, as none of the four affiants purports to have been present at the scene or otherwise to have personal knowledge of the events of November 14, 2007. Accordingly, Petitioner's state-court procedural default of Ground Three precludes habeas review thereof. *See Coleman*, 501 U.S. at 753-54; *Maes*, 46 F.3d at 985-86. Petitioner is not entitled to federal habeas relief on this claim.

## RECOMMENDATION

As detailed above, it is recommended that the Amended Petition for Writ of Habeas Corpus (Doc. No. 12) be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by November 20, 2014, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

The Clerk of the Court is directed to electronically forward a copy of this Report and Recommendation to Respondent and to the Attorney General for the State of Oklahoma at fhc.docket@oag.state.ok.us.

ENTERED this 30th day of October, 2014.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE